**MARYLAND CASUALTY CO. v. BOARD OF EDUCATION OF CITY OF ASBURY PARK, N. J., et al.**

Circuit Court of Appeals, Third Circuit.
July 2, 1927.

No. 3631.

1. Injunction ⬅=➣26(3)—Equity will not stay action at law to await liquidation of claims for set-off.

A court of equity will not stay an action at law until claims of defendant against plaintiff arising out of an unrelated transaction may be liquidated, so as to be available as a set-off in the law action.

2. Injunction ⬅=➣26(3)—Defendant in law action held not entitled to stay until determination of unrelated action, which might establish set-off.

The fact that complainant, which was surety on the bond of a building contractor, who defaulted, also became surety on the bond of another contractor for completion of the building, *held* not to create any relation between controversies arising upon the several bonds, which entitled complainant to stay of an action at law against it on the first bond until a controversy on the second bond could be determined, where there was no question of insolvency of the owner of the building.

3. Courts ⬅=➣347(3)—Set-off in equity is not matter of right in federal court.

Under the federal rule, the defense of set-off in equity is not a matter of right, but the court may permit the setting off of a counterclaim, whether liquidated or unliquidated, when the particular circumstances are such as to raise an equity in favor of the claim.

Appeal from the District Court of the United States for the District of New Jersey; Wm. N. Runyon, Judge.

Suit in equity by the Maryland Casualty Company against the Board of Education of the City of Asbury Park, N. J., and the McClary Corporation. Decree for defendants, and complainant appeals. Affirmed.

Burke Brothers Company entered into a contract with the Board of Education of the City of Asbury Park, a municipal corporation of New Jersey, for the erection of a school building, and gave bond for performance with the Maryland Casualty Company as surety. Burke Brothers Company defaulted. The Board of Education, as authorized by the contract, took possession of the work and advertised for bids for its completion. The Casualty Company, seeking to limit its liability, prevailed upon the McClary Corporation to make a bid, offering itself as surety. That concern had no connection with Burke Brothers Company. When its bid was accepted, the McClary Corporation entered into a contract with the Board of Education for the completion of the building at a construction cost of about $30,000 in excess of that of the first contract. The Casualty Company became surety on its bond for performance and, as required by New Jersey statute, also for payment of all lawful claims of subcontractors, materialmen and laborers incurred in prosecuting the work contracted for. Then the McClary Corporation defaulted. The Board of Education, pursuant to a provision in the contract, withheld from that

corporation payments not due until completion of the building and, under another provision, indicated its purpose to hold the contractor for the expense of finishing the work. The Casualty Company, recognizing its liability to pay subcontractors, materialmen and laborers, made payments of this kind in large amounts and admits its liability to make further payments.

John M. Enright and McDermott, Enright & Carpenter, all of Jersey City, N. J., for appellant.

Gerald McLaughlin and Arthur Egner, both of Newark, N. J., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge (after stating the facts as above). The Board of Education instituted a suit at law in a state court against Burke Brothers Company, principal, and the Casualty Company, surety, on their bond to recover damages it had sustained by the breech, measured by the difference between the construction cost stipulated in the contract with Burke Brothers Company and the larger construction cost in the contract with the McClary Corporation. Thereupon the Casualty Company filed a bill on the equity side of the District Court of the United States for the District of New Jersey, stating the aforegoing facts; representing that default by the McClary Corporation in performing its contract was due to misconduct on the part of the Board and its agents, whereby that corporation had sustained many losses and that by reason thereof the McClary Corporation, principal in the bond, had many valid but unliquidated counterclaims against the Board to which it (the Casualty Company) as surety had, of right, become subrogated; and praying that the District Court decree that it be subrogated to all claims of the McClary Corporation against the Board, liquidated and unliquidated, Henningsen v. Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547, and that it restrain the Board from further proceeding with its action at law on the bond of Burke Brothers Company and itself until the counterclaims of the McClary Corporation against the Board shall have been liquidated and, accordingly, until the amount due by the Board to it (the Casualty Company) as subrogee of that corporation shall have been adjudged. The court, declining to pass on the question of subrogation as between the Casualty Company and the McClary Corporation but holding jurisdiction thereof, refused to restrain the action at law instituted in the state court on the bond given under the first contract and, accordingly, dismissed the bill as to the Board on the ground that the Casualty Company's claims, even if it held them as subrogee, were unliquidated and its rights thereto unestablished, and, being presently uncertain, they were not proper matters for set off in equity.

[1] As the question of subrogation was not decided by the trial court, it is not here for review. The only matter decided by the decree appealed from and the only question properly here for consideration concerns the right of the Casualty Company, regarded as subrogee of the McClary Corporation, to demand that a court of equity stay the suit at law, involving one controversy, until the other controversy ripens, so that it may be used as a defense in the first. To review that issue it is necessary to determine the precise character of the two controversies, and particularly their relation, if any, to each other.

[2] While the subjects-matter of the two contracts entered into by different parties at different times were the erection of one building and in that sense related, at different stages of the work, to the same thing, the subjects-matter of the controversies were breaches of these several and entirely separate contracts. Therefore, these controversies arising out of and having to do with different things are wholly distinct. The right to sue and defend on one has no relation to the right to sue and defend on the other. It is an immaterial circumstance that the second bond given on the second contract related to the same building as the first bond given on the first contract. Likewise, it is immaterial that the surety, on the second bond happened to be the surety on the first. They were bonds given to assure performance of different contracts by different contractors, with respect to work at different periods of construction. Liability for breach of one is just as distinct from liability for breach of the other as though the contracts thus awarded to different contractors had been assured by bonds with different sureties.

On this finding no right of the Casualty Company to present counterclaims as a ground to stay the suit at law can be asserted by way of recoupment. But the Casualty Company says it has a right to a stay based on its claimed right of set-off to be enforced by a court of equity. On this question the learned trial court held against the Casualty Company on authority of Jackson v. Bell, 31 N. J. Eq. 554, where the equitable relief of set-off was denied seemingly on the ground

that the claim there asserted was unliquidated. The appellant has attacked that decision by citing subsequent legislation of the State of New Jersey. The purport of that legislation and its bearing on the cited decision, we prefer to leave to courts of that state.

[3] We shall, therefore, rest our decision on other grounds, and on federal authorities. These clearly show that a party to a suit in equity may not of right assert the defense of set-off—a defense peculiarly one of law. They indicate, however, with equal clarity that courts of equity permit the setting off of a counterclaim, whether liquidated or unliquidated, "when the particular circumstances have been such as to raise an equity in support of the claim". It is therefore some circumstance relating to the claim rather than the claim itself that will induce a court of equity to allow the defense. The circumstance most frequently availed of and the one found in each of the following cited cases is insolvency of the party asserting the major claim. North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co., 152 U. S. 596, 615, 622, 14 S. Ct. 710, 38 L. Ed. 565; Carr v. Hamilton, 129 U. S. 252, 9 S. Ct. 295, 32 L. Ed. 669; Central Appalachian Co. v. Buchanan (C. C. A. 6th) 90 F. 454, 459, 462. We discern no circumstance in the case at bar which should invoke such equitable action. Indeed, there is nothing peculiar or unusual in the case. The Board of Education has a distinct liquidated claim against the Casualty Company on the first bond. The Casualty Company, if subrogated to the rights of the McClary Corporation on the second bond, has claims against the Board which, admittedly, are unliquidated. Law courts are open to both parties. Equity does not compel one to wait for the other. The Board is, we assume, entirely solvent and will pay, or can be made to pay, any judgment the Casualty Company may recover against it.

The decree of the District Court is affirmed.